JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-05939-SB-MAR | Date: | September 22, 2021 |
|---|---|---|---|

| Title: | *Alexei Schutt v. Succulent Studios, Inc., et al,* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **ORDER GRANTING MOTION TO REMAND**

      Defendants Succulent Studios, Inc., Andrew Moeck, and Melissa Murphy removed this case from the Los Angeles Superior Court on July 22, 2021, invoking diversity jurisdiction. Dkt. No. 1. Plaintiff Alexei Schutt now moves to remand, arguing that Defendants have not met their burden to establish that diversity is complete, and seeks an award of attorney's fees. Dkt. No. 17. The Court finds that oral argument would not be helpful on this matter and vacates the October 1, 2021 hearing. Fed. R. Civ. P. 78; L.R. 7-15. The Court further finds that the case should be remanded but declines to impose an award of attorney's fees.

      A defendant may remove a civil action from state to federal court so long as jurisdiction originally would lie in federal court. 28 U.S.C. § 1441(a). Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. "The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong

presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

Plaintiff worked for Defendant Succulent Studios, Inc. (Succulent) in California from January 2019 until he was fired in February 2021 after making complaints about sexual harassment by Succulent's officers, Defendants Moeck and Murphy. Dkt. No. 1-1 (Compl.). Plaintiff filed suit in state court, alleging state law claims for unlawful harassment and discrimination on the basis of religion, retaliation, sexual harassment and sexual battery, failure to prevent discrimination, wrongful termination, defamation, and intentional infliction of emotional distress. *Id.* Defendants removed the case, asserting that Succulent is a Wyoming corporation with its "nerve center" in Washington and that Moeck and Murphy are citizens of Washington. Dkt. No. 1. It is undisputed that the amount in controversy exceeds $75,000. Plaintiff moves to remand, arguing that all three Defendants are in fact residents of California, and seeks an award of attorney's fees under 28 U.S.C. § 1447(c).

"To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person is "domiciled" in a location where he or she has established a "fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely." *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986) (cleaned up).

Moeck and Murphy, who are partners, produce declarations testifying that they have lived in Washington since 2017; that they home school their three children from their home in Washington; that they are registered to vote in Washington; that they have Washington driver's licenses and vehicles registered in Washington; and that they plan to remain in Washington when they retire. Dkt. Nos. 4, 5, 25-1, 25-4. They also testify that in a typical year, they spend about 60% of their time in Washington, 20% of their time in California, and the remainder traveling, and that they have not filed California income tax returns since 2019. Dkt. Nos. 25-1; 25-4.

Plaintiff, however, testifies in his declaration that during his two years of employment with Succulent, from 2019 through early 2021, he learned that Moeck and Murphy lived exclusively at their shared home in Long Beach, California, which Plaintiff visited; that Moeck and Murphy homeschooled their children—and hired a teacher and built a classroom—at the Succulent facilities in California; that he saw them both frequently at the office in California; and that Murphy came into

the office practically every day during Plaintiff's employment. Dkt. No. 17-3.[1] Moreover, while Murphy denies that she was present at Succulent's California facility when Plaintiff's process server purported to serve her, Dkt. No. 25-4 ¶ 10, Plaintiff produces proof of service indicating that Murphy was personally served and describing her physical characteristics, Dkt. No. 27-2 at 5 of 11.

    Apart from the conflicts between the parties' evidence, Moeck's and Murphy's declarations in opposition to remand contain material differences from the declarations they signed in support of removal. In the first set, they both declared under penalty of perjury that they were "domiciled in Cheney, in Spokane County," "have resided in our home in Cheney, Washington, for approximately the past four-and-a-half years," and "home school our three school-aged children from our home in Cheney, Washington." Dkt. Nos. 4, 5. In their subsequent declarations, however, they testify that they moved in February 2017 into a house in Spokane Valley (not Cheney) and that they purchased property in Cheney in June 2020, on which they are currently building the home where they intend to retire. Dkt. Nos. 25-1; 25-4. Defendants note in their brief that it was a "mistake" to state that their home was in Cheney and state that Spokane Valley is "the next town over," Dkt. No. 25, but they do not explain how they both overlooked this "mistake" that was prominently repeated three times in each of the short 1.5 page declarations that they signed under penalty of perjury. Moreover, Plaintiff asserts, and the Court takes judicial notice, that Cheney and Spokane Valley are approximately 25-30 miles apart and on opposite sides of Spokane. While Defendants ordinarily would be in the best position to produce evidence of their own domicile, their submissions raise serious questions about the reliability of their testimony.

    Even assuming that Moeck and Murphy are domiciled in Washington, however, they have not established that Succulent is non-diverse. For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). It is undisputed that Succulent is incorporated in Wyoming, but the parties dispute the

---

[1] Defendants object to many other parts of Plaintiff's testimony, primarily because they contend he has not established personal knowledge. To the extent the Court relies on evidence to which an evidentiary objection was raised, the Court overrules the objection. To the extent the Court does not rely on evidence objected to by Defendants, the objections are overruled as moot.

location of its principal place of business. The Supreme Court has clarified that a corporation's "principal place of business" refers to its "nerve center," typically its headquarters, where its activities are controlled:

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).
> . . .
> A corporation's "nerve center," usually its main headquarters, is a single place. The public often (though not always) considers it the corporation's main place of business.

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The Supreme Court cautioned against the possibility of jurisdictional manipulation, explaining that "if the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Id.* at 97.

Succulent's website emphasizes its connection to California, describing "its second-generation farm in Fallbrook and fulfillment center in Long Beach" in a section titled, "Born in California, raised wherever you are." Dkt. No. 17-2 at 6. The website lists as Succulent's contact information an address in South Gate, California, and there is no reference to any location outside California. *Id.* Plaintiff testifies that he worked first at Succulent's Long Beach location, then in Signal Hill, California, and finally, at the new South Gate facility that Succulent purchased and renovated; that Moeck told him he spent "a couple million dollars" on the South Gate location because he wanted it to become the company's new permanent headquarters; that the South Gate facility has numerous offices in addition to two separate warehouses; that the majority of Succulent's 35 employees work at the South Gate facility; and that the South Gate facility is the only company-owned property where employees work. Dkt. No. 17-3. Although

Defendants object to some of this testimony, they do not seriously dispute its accuracy or contend that Succulent owns or leases office space outside California.[2]

Instead, Defendants argue that the day-to-day operations in California are irrelevant under *Hertz* because Moeck and Murphy have directed, controlled, and coordinated Succulent's operations from their residence in Washington since its inception, such that Washington is Succulent's nerve center.[3] Moeck's and Murphy's testimony conflicts with Plaintiff's testimony that Murphy came into the California office practically every day during Plaintiff's two years of employment, and that Moeck also came into the office frequently. In light of this testimony, and given Moeck's and Murphy's inconsistent reporting of jurisdictional facts as noted above, the Court is unable to conclude that they have established by a preponderance of the evidence that they direct Succulent's operations from Washington rather than California.[4]

Moreover, none of the cases on which Defendants rely holds that a corporation's nerve center is in a state where it does not have any offices, simply because its officers reside in that state. *Cf. 3123 SMB LLC v. Horn*, 880 F.3d 461, 469 (9th Cir. 2018) ("Corporations aren't usually directed from their managers' homes."). Indeed, such a rule would undermine the certainty that *Hertz* sought to foster with the "nerve center" test, since it would cause Succulent's principal place of business to move every time Moeck and Murphy relocate their residence. *See id.* ("Equally problematic is the assumption that a corporation's principal place of business can shift over time without any change to the corporation's structure or operation. Such an approach 'invites greater litigation and can lead to strange

---

[2] Moeck's and Murphy's testimony that they plan to move Succulent's fulfillment center to Washington in the future has no bearing on the location of Succulent's nerve center at the time the case was filed and removed.

[3] Defendants also assert that Succulent's "two-person finance team" works in Washington, but Plaintiff contends that this refers to Moeck and Murphy rather than to additional employees, and Defendants have not suggested otherwise.

[4] That Succulent holds itself out as having roots in California and lists only a California address on its website suggests that the public would reasonably perceive Succulent to be headquartered in California, especially since its only facilities are in California. Although not dispositive, this further supports a finding that California is Succulent's principal place of business. *See Hertz*, 559 U.S. at 93 ("The public often (though not always) considers [the nerve center] the corporation's main place of business.").

results.'") (quoting *Hertz*, 559 U.S. at 94). Particularly in light of the rule that any doubts about the propriety of removal must be resolved in favor of remand, *Gaus*, 980 F.2d at 566, the Court finds that Defendants have not met their burden to show by a preponderance of the evidence that the requirements of § 1332 are satisfied such that this Court has diversity jurisdiction. Remand is therefore required.

Plaintiff requests an award of $9,715 in attorney's fees incurred in connection with his motion to remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Section 1447(c) gives district courts "wide discretion" in determining whether to award attorney's fees, and bad faith is not a prerequisite for an award. *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Although this Court has concluded that Defendants have not discharged their burden of establishing the propriety of removal, it cannot say without conducting an evidentiary hearing that Defendants lacked an objectively reasonable basis for seeking removal. Under these circumstances, the Court declines to impose an award of attorney's fees or to prolong this removed action and subject the parties to the expense of an evidentiary hearing to determine whether such an award may be warranted.[5]

Accordingly, Plaintiff's Motion to Remand is **GRANTED**, and this case is remanded to the Superior Court of Los Angeles County. Plaintiff's request for an award of attorney's fees is **DENIED**.

---

[5] Nothing in this opinion precludes Plaintiff from seeking, or the state court from imposing, an award of attorney's fees after remand if the state court determines that Defendants have made false representations or removed the case in bad faith, nor does this Court make any suggestion as to whether such findings would be warranted.